Robert FREEDMAN, et al.

v.

**VALUE HEALTH, INC., et al.**

**Civil Action No. 3:95CV2038 (JBA).**

United States District Court,
D. Connecticut.

March 3, 1997.

Leonard Barrack, Jeffrey W. Golan, Daniel E. Bacine, Barrack, Rodos & Bacine, Philadelphia, PA, J. Daniel Sagarin, Elias A. Alexiades, David A. Slossberg, Hurwitz & Sagarin, Milford, CT, David J. Bershad, Steven G. Schulman, Lori G. Feldman, Jeffrey S. Abraham, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, for plaintiffs.

John C. Millian, Jeffrey T. Gilleran, Gibson, Dunn & Crutcher, Washington, DC, David J. Elliott, Daniel L. Fitzmaurice, Regina A. Long, Day, Berry & Howard, Hartford, CT, for defendants.

Ronald J. Cohen, Jacqueline . D. Bucar, Robert B. Flynn, Tyler, Cooper & Alcorn, New Haven, CT, H. Robert Fiebach, Thomas G. Wilkinson, Jr., Douglas R. Widin, Cozen & O'Connor, Philadelphia, PA, for Nunzio P. DeSantis.

## RULING ON DEFENDANTS' MOTIONS TO DISMISS (DOCS. 28 & 32)

ARTERTON, District Judge.

This action concerns certain public statements made by defendant Value Health, Inc., and defendant Nunzio DeSantis, former CEO of Diagnostek, Inc., in connection with the 1995 merger of Value Health and Diagnostek. Plaintiffs bring this suit pursuant to various provisions of the Securities Act of 1933 (the "1933 Act") and the Securities Exchange Act of 1934 (the "1934 Act"). Defendants move to dismiss the action pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, defendants' motions are GRANTED in part and DENIED in part.

### BACKGROUND

For purposes of a motion to dismiss, the Court must accept as true all material facts alleged in the complaint. *Staron v. McDonald's Corp.*, 51 F.3d 353, 355 (2d Cir. 1995). The pertinent background facts set forth in the complaint are as follows. Value Health provides a variety of managed care services to health care providers and payers, specializing in mental health, pharmaceuticals, and utilization control software. Prior to its merger with Value Health, Diagnostek was in the business of institutional pharmacy management and mail-order pharmaceuticals. The intended merger between the two companies was announced on March 27, 1995.

Subsequent to the announcement, but prior to formal shareholder approval of the deal, Value Health made several statements to the effect that Value Health was having a good year financially; Value Health had conducted a full review of Diagnostek's business; and the merger was expected to be advantageous for Value Health's shareholders. Meanwhile, defendant DeSantis indicated that the deal would be advantageous to Diagnostek shareholders and that Diagnostek was a "thriving business."

On June 5, 1995, Value Health and Diagnostek modified their merger agreement to reflect an earnings loss by Diagnostek in the previous quarter. This loss was attributed to problems involving Diagnostek's contract

with the State of New Jersey. Under the revised merger agreement, Diagnostek shareholders were to receive .4975 Value Health shares for each share of Diagnostek. This revised agreement was approved by shareholders and consummated on July 28, 1995.

In late August and early September of 1995, several Value Health officers and directors, three of whom are named defendants in this suit, sold over 100,000 shares of their Value Health stock at prices of $37–$39 a share. In late September, Value Health began to disclose a variety of business problems, particularly in connection with the Diagnostek deal. The loss reserve required by Diagnostek for the New Jersey contract turned out to be far greater than anticipated in June. Additional loss reserves were required for other Diagnostek contracts, as well as Value Health's own contract with Ford Motor Company. Value Health was experiencing declining profit margins in its core businesses, and stated an intention to reorient its basic corporate strategy towards operating HMOs and PPOs. Finally, Value Health's CEO publicly conceded that his firm "blew it" on the Diagnostek deal and that there may have been shortcomings with the due diligence. In the wake of these announcements, Value Health stock dropped to $25 a share.

Plaintiffs are Robert Freedman, who purchased shares in Value Health on the open market shortly before and shortly after consummation of the merger with Diagnostek, and Peter and Christine Balkheimer and Steven Fingerit, who acquired shares in Value Health pursuant to the stock-for-stock merger transaction. The Freedman and Balkheimer suits, originally filed separately, have been consolidated under the docket number of the Freedman case. The named plaintiffs purport to represent a class of individuals who acquired Value Health shares between March 27 and September 19, 1995. Defendants are Value Health and various officers and directors of Value Health (the "Value Health defendants") and Nunzio DeSantis ("DeSantis").

## THE CLAIMS

Plaintiffs' consolidated class action complaint states five counts against the defendants. In the first count, plaintiffs allege violations by the Value Health defendants of Section 11 of the 1933 Act, which prohibits material misstatements and omissions in securities registration statements. Specifically, plaintiffs claim that the Joint Proxy Statement–Prospectus (the "Prospectus") filed with the SEC on June 27, 1995, omitted certain material information and that Value Health's representations as to the fairness of the transaction were misleading.

In the second count, plaintiffs allege violations by Value Health and DeSantis of Section 12(2) of the 1933 Act, which prohibits material misrepresentations or omissions in connection with the sale or offering of securities. In this count, plaintiffs rely on the same alleged omissions in the Prospectus that are the subject of the first count.

In the third count, plaintiffs allege violations by the individual Value Health defendants of Section 15 of the 1933 Act, which makes "controlling persons" liable for, *inter alia*, violations of Sections 11 and 12(2) of the 1933 Act.

In the fourth count, plaintiffs allege violations by all defendants of Section 10(b) of the 1934 Act, which prohibits knowing or reckless public dissemination of materially false or misleading statements.

In the fifth count, plaintiffs allege violations by the individual defendants of Section 20 of the 1934 Act, which establishes controlling person liability for violations of Section 10(b) of the 1934 Act.

The Value Health defendants and DeSantis have separately moved to dismiss all counts applicable to them, pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b).

## STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests only the sufficiency of the complaint, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), and should not be granted unless it appears beyond doubt that the plaintiff can prove no set

of facts in support of his claim which would entitle him or her to relief. *Conley v. Gibson,* 355 U.S. 41, 46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Anderson v. Coughlin,* 700 F.2d 37, 40 (2d Cir.1983). In making this determination, the court must accept as true the material facts alleged in the complaint and draw all reasonable inferences in favor of the non-moving party. *Staron v. McDonald's Corp.,* 51 F.3d 353, 355 (2d Cir. 1995). *See also Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686.

A motion to dismiss pursuant to Rule 9(b) implicates different standards, which will be discussed below in connection with the various claims under the 1934 Act.

## MOTION OF VALUE HEALTH DEFENDANTS

### A. Claims Under the 1933 Act

Plaintiffs' claims under the 1933 Act (counts 1–3) are based on a set of alleged omissions in the Prospectus:

1) The condition of the New Jersey contract, which was worse than revealed;

2) The existence of six other unprofitable Diagnostek contracts;

3) Value Health's declining revenue and profit trends; and

4) The change in Value Health's long-term business strategies.

Under the 1933 Act, defendants are subject to liability if, at the time of its effective date, the Prospectus: 1) contained an untrue statement of material fact; 2) omitted to state a material fact required to be stated therein; or 3) omitted to state a material fact "necessary to make the statements therein not misleading." 15 U.S.C. § 77k. Because plaintiffs' claims pertain to *omissions,* they must satisfy either the second or third prong of this provision.

Defendants argue that the 1933 Act claims must be dismissed because Value Health was under no duty to disclose the omitted facts, thus rendering the second prong inapplicable, and because plaintiffs have not identified any statements that were rendered misleading by virtue of the omissions, thus rendering the third prong inapplicable. Plaintiffs contest both of these arguments.

### I. Duty to Disclose Prong

█ There can be no serious claim that security registrants are required to disclose all material facts. "[A] corporation is not required to disclose a fact merely because a reasonable investor would very much like to know that fact." *In re Time Warner, Inc. Securities Litigation,* 9 F.3d 259, 267 (2d Cir.1993). However, plaintiffs contend that a duty to disclose arose in the present case as a result of the nature of the merger with Diagnostek and the SEC filings associated with the transaction. In connection with the merger, defendants filed Form S–4 with the SEC, which, under Item 10(a), requires registrants to list

> any and all material changes in the [registrant's] affairs that have occurred since the end of the latest fiscal year for which audited financial statements were included in the latest annual report to security holders [and that have not been otherwise set forth in the quarterly Form 10–Q or other required filings].

An identical provision in Form S–3 was found to give rise to a duty to disclose material facts in *Shaw v. Digital Equipment Corp.,* 82 F.3d 1194 (1st Cir.1996). Defendants attempt to distinguish *Shaw* on the ground that the defendant corporation in *Shaw* disclosed its bad news in its very next quarterly report, while the problems complained of in the present case were not disclosed until after the next quarterly report. However, the Court can discern no reason why the timing of the subsequent negative disclosures is relevant to the duty to disclose articulated in *Shaw.* Regardless of when the bad news finally broke, plaintiffs have alleged that the negative developments occurred by the time the Prospectus was issued. Assuming the materiality of these developments, which defendants have not challenged in the present motion, defendants' duty to disclose cannot turn on when they subsequently decided to break the bad news. Under defendants' narrow reading of *Shaw,* a registrant could negate his or her duty to disclose material facts in connection with a merger merely by failing

to disclose those facts in the immediately following quarterly statement.

The Court concludes that Item 10(a) provides the requisite duty to disclose such that plaintiffs' claims of material omissions may survive a motion to dismiss. The Court finds significant support for this conclusion in the analogy between a stock-for-stock merger and insider trading. By the terms of the merger agreement, Value Health "sold" its shares to Diagnostek shareholders in return for shares of Diagnostek. As the *Shaw* court reasoned:

> Just as an individual insider with material nonpublic information ... could not purchase his company's securities without making disclosure, the company itself may not engage in such a *purchase* of its own stock, if it is in possession of such undisclosed information. By extension, a comparable rule should apply to issuers in a stock *offering*. Otherwise, a corporate issuer selling its own securities would be left free to exploit its informational trading advantage, at the expense of investors, by delaying disclosure of material nonpublic negative news until after completion of the offering.

82 F.3d at 1204 (citations omitted, emphasis in the original). By this reasoning, which the Court finds persuasive, the disclosure duties on individual insider traders may be more broadly applicable to corporations trading their own stock.

Although the Court concludes that Value Health was under a duty to disclose in connection with the merger, this duty is limited in important respects, and the scope of plaintiffs' 1933 Act claims should be accordingly constrained. First, "federal securities laws impose no obligation upon an issuer to disclose forward-looking information, such as internal projections, estimates of future performance, forecasts, budgets, and similar data." *Shaw,* 82 F.3d at 1209. Thus, defendants are liable only for nondisclosure of "hard" material information that was in their possession at the effective date of the Prospectus. *Id.* at 1211 n. 21. Plaintiffs have alleged that such information was then available, but if a fuller evidentiary record indicates otherwise, e.g., if the post-merger prob-

lems were only anticipated, but not manifest, at the time of the Prospectus, then the 1933 Act claims may be subject to summary judgment. Tile second area of limitation arises from the fact that "reasonable investors understand that businesses fluctuate, and that past success is not a guarantee of more of the same." *Id.* at 1210. Accordingly, a registrant is only required to disclose information that represents "an extreme departure from publicly known trends and uncertainties." *Id.* at 1211. This, too, may become an appropriate matter to revisit in a summary judgment motion.

### 2. Misleading Statement Prong

Plaintiffs further claim that defendants' omissions are actionable in that they render other statements misleading. In particular, plaintiffs focus on the "fairness" language of the Prospectus: "The Value Health Board of Directors has unanimously determined that the Merger is fair to, and in the best interests of, Value Health and its stockholders." Plaintiffs argue that this statement was misleading when not offered with the facts that plaintiffs claim should have disclosed in the Prospectus. Citing an unpublished decision from this district, plaintiffs argue that liability may arise from a fairness opinion "upon the omission of material information which would permit the shareholder to make an informed decision about the fairness of the price." *See Kochenash v. Stanwich Oil & Gas, Inc.,* No. 5:92cv117, Slip Op. at 13 n. 23 (D.Conn. September 7, 1994) (Burns, J.).

Under the language from *Kochenash* upon which plaintiffs rely, it would appear that the rendering of a fairness opinion about a transaction imposes upon the person offering the opinion a duty to disclose all material information pertinent to the transaction, regardless of whether the fairness opinion itself was in any sense misleading. The Court can find no support for this sweeping proposition outside *Kochenash.* Indeed, the Court does not believe that *Kochenash* itself should be read as broadly as plaintiffs propose. The language at issue was offered in a footnote which argued that there is little practical difference between a misstatement and an omission that renders a prior statement mis-

leading. There is no basis for concluding that the *Kochenash* court intended its footnote to sweep so broadly as to impose liability for omissions in the absence of a misleading statement; indeed, there was a "fairness" opinion at issue in *Kochenash, id.* at 13, and the denial of the motion to dismiss turned on the holding that this opinion could be rendered materially misleading, *id.* at 14. Therefore, the Court concludes that fairness-opinion liability may not be premised on material omissions alone; rather, plaintiffs must make some sort of showing that, because of the omissions, the fairness opinion was rendered misleading. The more difficult question is in what sense the opinion must be misleading in order to be actionable.

As the Supreme Court has observed, a statement of opinion may be a material statement of fact in two senses: 1) as a statement of subjective fact (e.g., the directors *believe* the merger is fair), and 2) as a statement of objective fact (e.g., the merger *is* fair). *See Virginia Bankshares v. Sandberg,* 501 U.S. 1083, 1092, 111 S.Ct. 2749, 2757–58, 115 L.Ed.2d 929 (1991). Plaintiffs contend that a fairness opinion may give rise to liability based solely on a showing that the objective prong was false or misleading. However, while the case law is not without its ambiguities, the Court concludes that plaintiffs must make a showing with respect to both aspects of the opinion. *See Shields v. Citytrust Bancorp., Inc.,* 25 F.3d 1124, 1131 (2d Cir.1994) ("A statement of reasons, opinions, or belief by ... a person when recommending a course of action to stockholders can be actionable under the securities laws if the speaker knows the statement to be false."); *Mendell v. Greenberg,* 938 F.2d 1528, 1529 (2d Cir.1990) (once plaintiff demonstrates that fair value of stock was "materially in excess" of that recommended by directors, then district court can enter "the morass of alleged motivation and knowing deception"); *Friedman v. Mohasco Corp.,* 929 F.2d 77, 79 (2d Cir.1991) (holding that plaintiffs do not state cause of action "by alleging that securities to be issued would, in the opinion of financial advisors, have a specified market value and that the securities, when issued, did not attain the hoped for value"; "Significantly, there is no allegation in the Amended Complaint that CVCL and Merrill Lynch did not hold the joint opinion" that was the subject of the suit); *Shaw,* 82 F.3d at 1213 (plaintiffs state a cause of action with respect to defendant's opinion that restructuring reserves were adequate only insofar as they allege a contemporaneous "intent to undertake activities that would require" further restructuring charges); *In re PHLCORP.,* 1992 WL 85013, *6 (S.D.N.Y.1992) (Leval, J.) (permitting plaintiffs to amend complaint with respect to opinion statement only "on condition that the proposed complaint be further amended specifically to plead scienter").

If plaintiffs were correct, and there were no requirement that a statement of opinion be misleading in the subjective sense, then defendants might be held liable for making a merely negligent business judgment as to value or fairness. However, negligent business judgments are traditionally matters of state law and are generally beyond the reach of the federal securities statutes. *See Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 479, 97 S.Ct. 1292, 1304, 51 L.Ed.2d 480 (1977) ("Absent a clear indication of congressional intent, we are reluctant to federalize the substantial portion of the law of corporations that deals with transactions in securities....."); *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990) ("Securities laws do not guarantee sound business practices and do not protect investors against reverses."), *cert. denied,* 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990); *Field v. Trump,* 850 F.2d 938, 948 (2d Cir.1988) ("Allegations ... to support an action for breach of state-law fiduciary duties ordinarily do not state a claim under federal securities laws. Certainly, this is true of allegations of garden-variety mismanagement ...."), *cert. denied,* 489 U.S. 1012, 109 S.Ct. 1122, 103 L.Ed.2d 185 (1989); *Ciresi v. Citicorp,* 782 F.Supp. 819, 821 (S.D.N.Y.1991) ("allegations of corporate mismanagement" are not actionable under 1934 Act; plaintiffs may not "use disclosure obligations to 'federalize' wrongs that would otherwise only be actionable under state law"), *aff'd.,* 956 F.2d 1161 (2d Cir.1992). Plaintiffs' theory opens the possibility of a federal cause of action arising any time a merger or acquisition proves unsound by

hindsight, a result that finds no support in the statutes or case law.

The Court also finds implicit support for requiring a showing as to both the objective and subjective prongs in *Virginia Bankshares.* Although the Supreme Court did not directly address the question of whether a showing as to the objective prong alone was adequate, the Court made clear that a showing as to the *subjective* prong alone was not enough. 501 U.S. at 1096, 111 S.Ct. at 2760. In other words, the Court held that the objective prong was a *necessary* element of the plaintiffs burden of proof. Plaintiffs argue that the objective prong is also *sufficient.* However, if the objective prong were both necessary and sufficient to establish liability, it seems odd that the Court would discuss at some length the contours of a plaintiffs required showing under the subjective prong, *id.* at 1095–96, 111 S.Ct. at 2759–60, for the subjective prong would always be a purely gratuitous aspect of a plaintiffs case.

 Therefore, the Court concludes that plaintiffs do not state a cause of action with respect to an opinion statement unless they offer allegations that the statement was incorrect or misleading as to both its objective and subjective aspects. However, the Court also concludes that the subjective prong may be satisfied by allegations of recklessness: a plaintiff's allegations do not need to rise to the level of intentional deception. *See De-Salle v. A.G. Edwards & Sons, Inc.,* 804 F.Supp. 436, 438 (D.Conn.1992) (Dorsey, J.) (holding that statements of opinion are only actionable if plaintiff alleges "intent to deceive or recklessness"); *PHLCORP.,* 1992 WL 85013, at *5 (permitting plaintiffs to amend complaint so as to allege that defendants were reckless in holding the opinions at issue); *cf. In re Hunter Environmental Services, Inc. Securities Litigation,* 921 F.Supp. 914, 924–25 (D.Conn.1996) (Squatrito, J.) ("[T]he issue here turns on whether Hunter knew or should have known that its beliefs and opinions were false.").

 Although the Court rejects plaintiffs' liberal construction of the cause of action for statements of opinion under the 1933 Act, plaintiffs may still satisfy the relevant pleading requirements with respect to the Court's two-prong construction. The Consolidated Class Action Complaint alleges that the fairness opinion was "materially false and misleading at the time [it was] issued" (¶ 35), Diagnostek was losing money on "six of its most important contracts" at the time of the opinion (¶ 36), Value Health represented in the Prospectus that it had "knowledge of the business, operations, properties, assets, financial condition, operating results, and prospects" of Diagnostek (¶ 36), Value Health disclosed significant problems with Diagnostek's business just three months after issuing the fairness opinion, which contributed to a substantial drop in the firm's stock prices, amounting to nearly one third of their value (¶ 45), and Value Health later indicated a need to take a charge of over $115 million in connection with the merger and clean-up of Diagnostek, more than twice the charge that the Prospectus indicated would be necessary (¶ 51). In light of the liberal pleading requirements of Fed.R.Civ.P. 8, and drawing all reasonable inferences in favor of the plaintiffs, as the Court must do when reviewing a motion under Fed.R.Civ.P. 12(b)(6), the Court concludes that these allegations satisfy the requirement that plaintiffs allege that the terms of the merger were unfair to Value Health shareholders and that the Value Health defendants were at least reckless in holding the opinion that the merger was fair. Thus, plaintiffs have adequately alleged that the fairness opinion was misleading.

## B. Claims Under the 1934 Act

Liability under the 1934 Act (counts 4 and 5) arises from materially false or misleading statements or omissions that were knowingly or recklessly made. Claims under the 1934 Act differ from claims under the 1933 Act in that they may encompass statements made outside of SEC registration documents, they require a showing of scienter, and they are subject to the heightened pleading requirements for fraud under Fed.R.Civ.P. 9(b). Rule 9(b) provides as follows: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally."

754

Plaintiffs allege liability under the 1934 Act in connection with the following statements:

1) Defendants' statements in their 1994 annual report and elsewhere that allegedly promise that Value Health's "basic strategies" would remain unchanged;

2) Defendants' statements in their 1994 annual report that Value Health's margins were "holding up" in 1995;

3) Defendants' statement in the merger announcement that the merger would be "non-dilutive to Value Health's earnings going forward";

4) Defendant Patricelli's statement on June 5, 1995, that the terms of the merger took "into account a full review of the ongoing earnings potential of Diagnostek"; and

5) The same statements and omissions in the Prospectus for which plaintiffs seek liability under the 1933 Act.

Plaintiffs contend that the first three statements were rendered materially misleading by virtue of developments prior to the merger, such that defendants were under an obligation to disclose certain information so as to correct the statements. Plaintiffs contend that the June 5 statement and the Prospectus were false or misleading at the time they were issued.

Defendants seek dismissal pursuant to Rules 9(b) and 12(b)(6).

### 1. Scienter—General Considerations

■ Although Rule 9(b) provides that state of mind may be averred generally, "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent. The requisite "strong inference" of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.' " *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir.1995) (citations omitted). Defendants argue that plaintiffs fail to meet this standard.

### a. Circumstantial Evidence

Although the Court has concluded that plaintiffs' allegations give rise to an inference of recklessness with respect to the 1933 Act claims, this conclusion does not necessarily dictate a similar result with respect to the 1934 Act claims, which implicate the heightened pleading requirements of Rule 9(b) and involve a number of statements not encompassed by the 1933 Act claims. In order to satisfy the requirements of Rule 9(b), plaintiffs may not simply allege misguided optimism or "fraud by hindsight." The Court will review plaintiffs' claims in this regard in light of the Second Circuit's holding in *Shields v. Citytrust Bancorp., Inc.*:

> Shields records statements by defendants predicting a prosperous future and holds them up against a backdrop of what actually transpired.... This technique is sufficient to allege that the defendants were wrong; but misguided optimism is not a cause of action, and does not support an inference of fraud. We have rejected the legitimacy of "alleging fraud by hindsight."
>
> ... The closest [plaintiff] comes is to allege that "[d]efendants knew or were reckless in not knowing ... that Citytrust's reserves for loan losses were completely inadequate in light of the risks which the loan portfolio entailed, and that such reserves would have to be substantially increased".... These allegations do not say, however, that the company's disclosures were inconsistent with current data. The pleading strongly suggests that the defendants should have been more alert and more skeptical, but nothing alleged indicates that management was promoting a fraud. People in charge of an enterprise are not required to take a gloomy, fearful or defeatist view of the future....

25 F.3d 1124, 1129 (2d Cir.1994).

### b. Motive and Opportunity

In addition to relying on circumstantial evidence of fraud, plaintiffs also invoke the motive and opportunity prong of the scienter requirement by pointing to the insider trading by Value Health defendants in late August and early September of 1995. The Sec-

ond Circuit has suggested that the pleading requirements of Rule 9(b) may be satisfied by showing that "false statements were made in an effort to sell off shares held by management." *Shields*, 25 F.3d at 1130. Plaintiffs' specific allegations as to the stock sell-off by named defendants are as follows:

1) Defendant Schulman, an officer and director of Value Health, sold 25,000 shares in August 1995, with the stated reason of financing a new home;

2) Defendant McDonnell, an outside director, sold 32,200 shares in September 1995, amounting to 40% of his holdings in Value Health; and

3) Defendant McBride, a director and soon-to-be ex-officer, sold 25,000 shares in September 1995, amounting to 83% of his holdings.

All three earned substantially more on their sales than they would have had they waited until after the late September disclosures.

In arguing that plaintiffs' allegations are insufficient to establish motive and opportunity for fraud, defendants rely on the Second Circuit's opinion in *Acito*, in which defendant Kennedy sold 384,000 shares of the defendant corporation's stock shortly before a negative press release about the corporation. In rejecting a claim that these transactions gave rise to a strong inference of fraud, the court seemed to ascribe particular importance to several factors: Kennedy was an outside director, the public was given advance notice of the sale of the first 354,000 shares; the sale of the first 354,000 shares occurred before one of the events whose nondisclosure was the subject of the suit; after the sale, Kennedy retained 259,000 shares and/or options in the defendant corporation's stock; and none of the other individual defendants had sold their shares during the period at issue. Defendants seek to analogize the present suit to *Acito* in that only three of the nine named defendants are alleged to have sold shares prior to the September disclosures: "The fact that the other defendants did not sell their shares during the relevant class period undermines plaintiffs' claim that defendants delayed notifying the public 'so that they could sell their stock at a huge profit.'" *Acito*, 47 F.3d at 54. However, the Court finds *Acito* distinguishable in other respects: two of the three traders were officers, not merely outside directors; advance notice of the sales was not provided to the public; all of the sales were completed after the misleading statements and omissions that are the subject of this suit; and at least one of the three directors, McBride, sold off a significantly greater percentage of his shares (83%) than did Kennedy.

Because the Court finds that the allegations in the present case give rise to a stronger inference of fraud than the *Acito* allegations, and in light of the numerous cases from other districts in which comparable allegations satisfied the scienter requirements of Rule 9(b), the Court concludes that the allegations of insider trading may be probative as to the fraudulent intent alleged in plaintiffs' 1934 Act claims. *See Marksman Partners, L.P. v. Chantal Pharmaceutical*, 927 F.Supp. 1297, 1312–13 (C.D.Cal.1996) (scienter properly pled when plaintiff alleged that CEO had sold 20% of his shares before downturn and had not sold any shares over previous three years); *McCarthy v. C–Cor Electronics, Inc.*, 909 F.Supp. 970, 978–79 (E.D.Pa.1995) (finding inference of fraud where CEO sold 15–20% of his shares shortly after misleading press release); *In re Gupta Securities Litigation*, 900 F.Supp. 1217, 1231–32 (N.D.Cal.1994) (scienter properly pled where defendants sold shares worth $10 million before corporation significantly increased loss reserves); *Alfus v. Pyramid Technology Corp.*, 764 F.Supp. 598, 604–05 (N.D.Cal.1991) (scienter properly pled when six defendants sold shares worth $4.5 million before negative disclosure). *But see In re Cypress Semiconductor Securities Litigation*, 1992 WL 394927, *2 (N.D.Cal.1992) (no inference of scienter where three defendants sold shares worth only $1.4 million, some of sales occurred after negative disclosure, and one defendant owned large number of shares but did not sell any).

### 2. Analysis of Specific Claims

Rule 9(b) requires more than just properly alleging scienter. "Specifically, the complaint must: (1) specify the statements that plaintiff contends were fraudulent, (2) identi-

fy the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993). Each of these requirements must be analyzed with respect to each of the allegedly fraudulent statements.

### a. Promise to Retain Basic Strategies

■ In seeking to establish liability in connection with the change in Value Health's business strategy announced in September 1995, plaintiffs rely on a variety of statements. Plaintiffs assert that defendant Patricelli stated at some point prior to the merger that "We are not now nor will we ever be an HMO or PPO." However, at oral argument, plaintiffs conceded that they do not know when or where such a statement was made. Therefore, with respect to that statement, plaintiffs have obviously failed to satisfy the pleading requirements of Rule 9(b).

Next, plaintiffs rely on a statement in Value Health's 1994 annual report, in which defendant Patricelli summarized 1994 as follows: "[W]e can see now that the tide was swinging strongly in favor of private market approaches to health care reform, to managed care, and to companies like Value Health. It will prove to have been a watershed year nationally, and a year of confirmation of Value Health's basic strategies." (Comp., ¶ 26.) However, in the Court's view, this statement is no guarantee of future strategic directions for the company. The statement purports to comment only on *1994*, not 1995, the year of the alleged strategic change. Moreover, when read in context, the statement does not indicate that *Value Health* was confirming its basic strategies, as plaintiffs claim, but that health care reform and the health care market were confirming the strategies.

■ Finally, plaintiffs rely on a statement by Value Health in a Form 10–Q to the effect that "the Company may in the future acquire certain businesses or products complementary to its strategy." (Compl., ¶ 27.) The Court finds this statement, too, to be far short of a promise to retain any particular strategy. Indeed, the statement does not identify what is meant by "its strategy." Nor is it clear that a "complementary" acquisition could not represent a modification of Value Health's business strategy.

Even if the quoted statements could be read as promises to retain existing business strategies, plaintiffs have provided no factual allegations indicating that Value Health intended to change its business strategy at the time of the statements or even while the statements were still "alive" in the marketplace. A late September announcement of a change cannot by itself give rise to an inference that the change was intended or even seriously contemplated in July or early August, when the named plaintiffs acquired their shares. *See San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 812 (2d Cir.1996) ("While it may be reasonable to infer that Philip Morris began to consider changing its marketing strategy at least a couple of weeks before the plan was presented to the Board of Directors ... the plaintiffs have not alleged circumstances indicating how such consideration would have rendered any of the company's prior public statements [concerning its marketing strategy] false.").

Plaintiffs rely primarily on the Second Circuit's decision in *In re Time Warner Inc. Securities Litigation* that when a company announces that it is "pursuing a specific business goal as well as an intended approach for reaching it, it may come under an obligation to disclose other approaches to reaching the goal when those approaches are under active and serious consideration." 9 F.3d 259, 268 (2d Cir.1993), *cert. denied*, 511 U.S. 1017, 114 S.Ct. 1397, 128 L.Ed.2d 70 (1994). However, plaintiffs have failed to show that Value Health announced "a specific business goal and an intended approach for reaching it" or that Value Health had taken other approaches "under active and serious consideration" at any particular time. In light of these deficiencies and the Second Circuit's strict limitation of *Time Warner, see San Leandro,* 75 F.3d at 810 ("We believe that *Time Warner* went nearly to the outer limit of the line that separates disclosable plans from plans that need not be disclosed ...."),

the Court concludes that the present claim does not fall within the ambit of the Time Warner holding. Accordingly, defendants are entitled to dismissal of plaintiffs' 1934 Act claims insofar as they are premised on an alleged nondisclosure of a change in Value Health's business strategies.

### b. Statement That Margins Are Holding Up

■ Next, plaintiffs seek to impose liability based on the statement in the 1994 annual report that, "So far ... our business continues to grow and our 1995 margins are holding up." (Compl., ¶ 26(a).) Plaintiffs do not claim that this statement was false when made, April 3, 1995, but, rather, that it required correction by the time of the merger. However, this theory fails for two reasons. First, the statement that the 1995 margins "are holding up" is clearly qualified by the phrase "so far." Value Health provided no indication that the margins would continue to hold up beyond April 3; therefore, it is difficult to see how the statement could be rendered false or misleading by a subsequent failure to disclose diminishing profit margins. Second, plaintiffs have not alleged in any nonconclusory fashion that profit margins were in a state of significant decline prior to the merger. Again, a disclosure of declining profit margins in late September does not create an inference that such declines were known or should have been known earlier. Therefore, dismissal of plaintiffs' claims is appropriate insofar as they assert liability based on the "margins are holding up" statement.

### c. Full Review of Diagnostek

■ Next, plaintiffs contend that Patricelli's June 5 statement that a "full review" had been conducted of Diagnostek's earnings potential was false or misleading when made. Defendants counter that a "full review" is not the same thing as an "adequate review." However, the two phrases are clearly close enough in meaning that it could at least be misleading for defendants to call an inadequate review "full." Defendants also argue that the later admission of "shortcomings" in due diligence does not constitute an admis-

sion that the "full review" was inadequate by any standard other than hindsight. However, when combined with the enormous loss reserves taken later with respect to Diagnostek and the separate admission that Value Health "blew it" in effecting the merger, the admission of "shortcomings" in due diligence creates an inference that the review conducted by Value Health was substantially short of "full." In sum, the Court concludes that plaintiffs have adequately alleged that the "full review" statement was materially misleading.

Scienter presents a substantially more difficult question. However, the Court is satisfied that the magnitude of the problems with Diagnostek, the rapidity with which the problems became apparent after the merger, and the subsequent admissions by Patricelli give rise to a strong inference that the shortcomings with the due diligence were sufficiently profound that Value Health acted in a manner that was at least reckless when it asserted that its review of Diagnostek was "full." These allegations remove the "full review" statement from the realm of merely "misguided optimism" and distinguish the case from Shields. The Court finds further support for a strong inference of fraud in light of the insider trading activities discussed above. Accordingly, defendants' motion to dismiss claims premised on the "full review" statement will be denied.

### d. Assurance That Merger Would Be Non–Dilutive as to Earnings

■ Plaintiffs seek to impose liability based on the March 27, 1995, announcement of the merger, in which Value Health stated, "The transaction will be non-dilutive to Value Health's earnings going forward, and there will be opportunities for significant synergies beginning in 1996. We will be taking a restructuring reserve in the quarter in which the deal closes." (Compl., ¶ 23.) Plaintiffs contend that these statements were rendered materially misleading by Diagnostek's money-losing contracts, and that the defendants knew or should have known by the time of the merger that Value Health's earnings would be adversely affected and the company

would be required to take additional restructuring charges.

In essence, plaintiffs' claim rests on a rosy prediction of the future by Value Health: notwithstanding the necessity of a restructuring charge in connection with the merger, Diagnostek would not ultimately prove to be a drag on Value Health's earnings. However, predictions of future performance are generally not held to be material statements of fact, which renders them nonactionable as a matter of law. As the Fourth Circuit has observed, "[E]xpressions of belief or opinion concerning *current* facts may be material.... Predictions of future growth stand on a different footing, however, because they will almost always prove to be wrong in hindsight." *Raab v. General Physics Corp.,* 4 F.3d 286, 290 (4th Cir.1993). Thus, the Second Circuit has found nonactionable statements by a corporation that it "should deliver income growth consistent with its historically superior performance" and "we are optimistic about 1993": "These statements 'lack the sort of definite positive projections that might require later correction.' ... [S]uch puffery is not actionable." *San Leandro,* 75 F.3d at 811 (citations omitted). *See also Friedman,* 929 F.2d at 79 (holding that a complaint fails to state "a cause of action under federal securities laws by alleging that the defendants represented that securities to be issued would, in the opinion of financial advisors, have a specified market value and that the securities, when issued, did not attain the hoped for value"); *Hershfang v. Citicorp,* 767 F.Supp. 1251, 1256 (S.D.N.Y. 1991) ("Statements about future events that are plainly expressions of opinion and not guarantees are not actionable under the federal securities laws."); *Phillips v. Kidder, Peabody & Co.,* 933 F.Supp. 303, 324 (S.D.N.Y.1996) ("Statements in a prospectus are not actionable unless they are guarantees of performance and not opinions.").

Examined in its entirety, the "non-dilutive to earnings" statement cannot be read as a guarantee as to the nature and scope of the charges that Value Health would take in connection with the merger, or as to when and to what extent Diagnostek would begin to contribute to Value Health's earnings.

The Court finds the statement to be a purely forward-looking opinion and to "lack the sort of definite positive projections that might require later correction." *See San Leandro,* 75 F.3d at 811. Accordingly, the Court concludes that the statement is not actionable under the 1934 Act.

### e. *Prospectus Statements and Omissions*

■ Lastly, plaintiffs seek liability under the 1934 Act for the same statements and omissions upon which their 1933 Act claims were premised. Although the question may be closer here in light of the heightened pleading requirements of Rule 9(b), the Court concludes that plaintiffs have stated claims based on the fairness opinion and the failure to disclose the alleged material facts that were omitted. *See Shaw,* 82 F.3d at 1221–22 (holding that plaintiffs stated claims for material omissions from Prospectus under both 1933 Act and 1934 Act). The Court is persuaded that the alleged deficiencies of the Prospectus go beyond mere "misguided optimism" in light of the magnitude of the problems with the merger, the rapidity with which those problems became apparent, and the later admissions that Value Health "blew it" and performed inadequate due diligence. *See Siebert v. Nives,* 871 F.Supp. 110, 117 (D.Conn.1994) (Cabranes, J.) ("By juxtaposing Amity's statements about its lending policy with specific facts about that policy and other developments which undermine the credibility of those statements, the plaintiffs have alleged not only that the defendants may have made some mistakes, but also that the defendants knowingly or recklessly misrepresented their lending policy."). Notwithstanding the requirements of Rule 9(b), the Court must construe all reasonable inferences in favor of the plaintiffs in a motion to dismiss. *See Time Warner,* 9 F.3d at 270. Although the decision is a close one, the Court may reasonably infer from plaintiffs' factual allegations that Value Health acted recklessly in rendering its fairness opinion and in omitting material facts from the Prospectus.

Based on the persuasive circumstantial evidence of recklessness alleged, the Court concludes that plaintiffs have met their burden

of raising a strong inference of fraud with respect to the Prospectus's nondisclosure of Diagnostek's business problems. The Court finds further support for this conclusion in the insider trading allegations discussed above, which provide evidence of motive and opportunity to commit fraud. Accordingly, the Court will deny Value Health's motion to dismiss as to statements and omissions in the Prospectus.

### DESANTIS MOTION TO DISMISS

#### A. Claims Under the 1933 Act

■ Plaintiffs' claims against DeSantis under the 1933 Act seem to rest solely on a single statement contained in a letter to Diagnostek shareholders accompanying the Prospectus: "Your Board of Directors has determined that the merger and the transactions contemplated thereby are in the best interests of Diagnostek and its stockholders." (Compl., ¶ 31.) Neither the complaint nor any of the papers filed to date suggest that DeSantis was required to complete a Form S–4 in connection with the merger or that he otherwise falls within the "duty to disclose" prong of omission liability under the 1933 Act. Accordingly, plaintiffs must satisfy the requirements set forth above for stating a cause of action based on an opinion.

Plaintiffs' allegations relating to the "best interests" statement are plainly deficient. Even if plaintiffs could show objectively that the merger was against the best interests of Diagnostek shareholders, which strains credulity in light of the scope of the problems Diagnostek itself was allegedly experiencing, plaintiffs have made no claim that DeSantis knew or should have known of Value Health's alleged premerger difficulties. Nor have plaintiffs offered allegations that could lead to a reasonable inference that DeSantis knew or should have known of such difficulties. In the Court's view, the vague allegations that Value Health was experiencing "pressure on its profit margins" and would eventually lay off "as many as 400 to 500 employees" after the merger (Compl., ¶ 37) do not support an inference that DeSantis either did not believe that the merger was in the best interests of shareholders or was reckless in holding such a belief. In light of this deficiency, and of plaintiffs' failure to offer any express allegations concerning DeSantis's state of mind with respect to the interests of Diagnostek shareholders, the Court concludes that DeSantis is entitled to dismissal of the 1933 Act claims against him.

#### B. Claims Under the 1934 Act

Plaintiffs seek to hold DeSantis liable under § 10(b) for two statements: 1) the Diagnostek Board's recommendation contained in the Prospectus, and 2) the June 5 statement, "Diagnostek's core integrated pharmacy service revenues grew by 65% in the just reported fiscal year, so this is a thriving business which should be strengthened even further in the merger with Value Health." (Compl., ¶ 29.) For the reasons set forth above, the Court finds plaintiffs' allegations with respect to the Prospectus recommendation to be deficient; therefore only the June 5 statement need be examined further.

#### 1. Scienter

■ The requisite showing of fraud under Rule 9(b) may be made "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields*, 25 F.3d at 1128. Plaintiffs argue that the multimillion dollar compensation package received by DeSantis as a result of the merger provided ample motive for DeSantis to fraudulently represent that Diagnostek was in better financial health than it was. DeSantis contends that "compensation for professional services is not evidence of scienter." *See Kas v. Chase Manhattan Bank, N.A.*, 1990 WL 113185, *2 (S.D.N.Y.1990). However, plaintiffs' allegations transcend mere "compensation for professional services." Although a portion of DeSantis's compensation took the form of consulting fees, the fact remains, as conceded by DeSantis's counsel at oral argument, that DeSantis would have been paid nothing if the merger fell through. Coupled with plaintiffs' allegations that Diagnostek was in effect a "sinking ship" at the time of the merger, and construing all reasonable inferences in plaintiffs' favor, the

Court concludes that DeSantis had a motive to commit·fraud in the form of the multimillion-dollar compensation package he received as a result of the merger. Opportunity is not challenged by DeSantis. Accordingly, the Court concludes that plaintiffs have raised the requisite "strong inference of fraud" under the motive and opportunity prong.

### 2. Material Statement of Fact

DeSantis contends that the June 5 statement was too vague to be actionable as a material statement of fact under § 10(b). Plaintiffs do not argue that the aspect of the statement claiming revenue growth in the previous year was false; nor do plaintiffs seek liability based on the projection that Diagnostek's business would be strengthened by merger with Value Health. Thus, the aspect of the June 5 statement that is at issue is solely the assertion that "this is a thriving business." DeSantis characterizes this assertion as mere "puffery," arguing that it cannot, as a matter of law, satisfy the definition of materiality as something that "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976).

Both sides cite numerous other cases in an effort to establish close analogies with the present factual allegations. DeSantis relies on cases like *Searls v. Glasser*, 64 F.3d 1061, 1066 (7th Cir.1995), in which the statement that a company was "recession-resistant" was found to be non-actionable because it was "too vague to constitute a material statement of fact," and *Raab v. General Physics Corp.*, 4 F.3d 286, 289 (4th Cir.1993), in which the statement that the defendant "is poised to carry the growth and success of 1991 well into the future" was found non-actionable because "the market price of a share is not inflated by vague statements predicting growth." Plaintiffs distinguish these cases on the basis that the statements found to be nonactionable were forward-looking, whereas DeSantis's description of Diagnostek as a thriving concern purported to provide information about the here and now. *Raab* itself

acknowledged this distinction: "[W]e recognize that expressions of belief or opinion concerning *current* facts may be material.... Predictions of future growth stand on a different footing, however, because they will almost always prove to be wrong in hindsight." 4 F.3d at 290 (citations omitted, emphasis in the original).

The cases relied on by plaintiffs also fall short of being directly on point. Although the court in *F.N. Wolf & Co., Inc. v. Estate of Neal*, 1991 WL 34186 (S.D.N.Y.1991), denied a motion to dismiss a complaint in which the plaintiffs alleged that the defendants falsely represented their company to be "thriving," this allegation was only one of a long list of allegations of material misstatements, and the court offered no assessment of the materiality of any of the individual allegations. However, other cases cited by plaintiffs provide support for the proposition that statements of present reality no less "soft" than "this is a thriving business" may be material under federal securities law. In *Siebert v. Nives*, 871 F.Supp. 110, 116–17 (D.Conn. 1994) (Cabranes, J.), the court found statements that a bank's lending policies were "conservative" and its loss reserves "adequate" could provide a basis for a claim under § 10(b). In *Seeman v. Arthur Andersen & Co.*, 896 F.Supp. 250, 258 (D.Conn. 1995) (Cabranes, J.), the court found that an accountant could be held liable for representing to investors that a "ponzi scheme" was in fact a "sound and viable" investment.

The Court finds there to be little clear guidance in the case law as to when a statement crosses the threshold from a "promotional phrase ... devoid of any substantive information," *Searls*, 64 F.3d at 1066, to a material representation that a reasonable investor might consider important. In the absence of clear authority as to whether "this is a thriving business" falls on the actionable or nonactionable side of the line, the Court concludes that the most prudent course of action is to permit the development of a more complete factual record as to the context of DeSantis's statement and its reception by the market. As the Supreme Court has observed, "The determination [of materiality] requires delicate assessments of the infer-

ences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact." *TSC Industries,* 426 U.S. at 450, 96 S.Ct. at 2133. Although the decision is a very close one, because the Court finds that the requisite "delicate assessment" of the June 5 statement cannot be made on the present record, DeSantis's motion to dismiss will be denied as to that statement.

## CONCLUSION

For the foregoing reasons, the Value Health defendants' Motion to Dismiss (Doc. 28) is GRANTED as to plaintiffs' 1934 Act claims arising from the alleged change in business strategies, the statement that "margins are holding up," and the "nondilutive to earnings" statement; the motion is DENIED as to the remainder of plaintiffs' claims against the Value Health defendants under the 1933 and 1934 Acts. DeSantis's Motion to Dismiss (Doc. 32) is GRANTED as to claims arising from the Prospectus, and DENIED as to claims arising from the statement that "this is a thriving business."

IT IS SO ORDERED.