Roger A. PODANY, for himself and all others similarly situated, Plaintiffs,

v.

**ROBERTSON STEPHENS, INC., and Paul Johnson, Defendants.**

Anthony V. Finazzo, for himself and all others similarly situated, Plaintiffs,

v.

Robertson Stephens, Inc., and Paul Johnson, Defendants.

Nos. 03 Civ. 3961(GEL), 03 Civ. 4018(GEL).

United States District Court, S.D. New York.

May 24, 2004.

Joseph H. Weiss, Jack I. Zwick, Weiss & Yourman, New York City (Kevin J. Yourman, Jordan L. Lurie, Leigh A. Parker, Weiss & Yourman, Los Angeles, CA, of Counsel), John Balestriere (for Finazzo plaintiffs only), Marc I. Gross, Pomerantz Haudek Block Grossman & Gross LLP, New York City; and Jacqueline Sailer, Gregory B. Linkh, Rabin, Murray & Frank LLP, New York City, for Podany and Finazzo plaintiffs.

Andrew J. Frackman, Jill G. Fieldstein, Brendan Dowd, O'Melveny & Myers LLP, New York City, for defendant Robertson Stephens, Inc.

Eric S. Goldstein, Matthew J. Gaul, Douglas M. Pravda, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York City, for defendant Paul Johnson.

## OPINION AND ORDER

LYNCH, District Judge.

These two actions involve claims that an equity analyst, defendant Paul Johnson, engaged in a scheme with the knowledge of his employer broker-dealer, defendant Robertson Stephens, to commit securities fraud by publishing false statements of opinion about two stock issuers, Redback and Sycamore, in reports distributed by Robertson Stephens. Plaintiffs are investors who purchased the securities of Redback and Sycamore during the time Johnson and Robertson Stephens were issuing the allegedly false and misleading reports, and who seek to represent a class of others similarly situated. On February 10, 2004, this Court granted defendants' motion to dismiss plaintiffs' class action complaints for securities fraud in these two cases.[1] Plaintiffs have now moved pursuant to Rule 59(e) to amend the February 10 Order to explicitly allow leave to amend the complaints, and to lift the stay of discovery pursuant to the Private Securities Litigation Reform Act ("PSLRA") to permit additional discovery. In the course of briefing on the motion, the nature of the relief sought by plaintiffs has changed somewhat, but in the end the result must be the same. The motion will be denied.

## DISCUSSION

In the February 10 Order, the Court ruled that plaintiffs had failed to state a claim upon which relief could be granted under section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, because they had failed to allege specific provable statements or actions from which a factfinder could reasonably infer that the published opinions of the defendants were not truly held. *Podany v. Robertson Stephens, Inc.*, 318 F.Supp.2d 146, 154–55 (S.D.N.Y.2004). The complaints were dismissed, although the Court did not specify in the February 10 Order whether the dismissal was with or without permission to replead. Accordingly, plaintiffs' initial motion sought to amend the judgment to specify that the dismissal was without prejudice to an effort to amend their complaints. However, plaintiffs did not, as might have been expected in such a motion, attach a proposed amended complaint, or otherwise indicate what additional facts such a complaint might include that could correct the pleading deficiencies in the dismissed complaints or alter the Court's analysis in the February 10 Order. Instead, plaintiffs sought permission to engage in "limited" discovery in the hope of uncovering facts that might allow a further-amended complaint to state a legally cognizable claim for securities fraud. Such permission was necessary not only because of the stay of discovery imposed by the PSLRA, but also because dismissed actions ordinarily give would-be litigants no authority to conduct discovery of their target defendants.

The motion, as initially formulated, was totally without merit. While courts are receptive to motions to replead where the defects that led to dismissal can be cured, *see* Fed.R.Civ.P. 15(a) ("leave [to amend] shall be freely given when justice so requires"); *Foman v. Davis*, 371 U.S. 178, 181–82, 83 S.Ct. 227, 9 L.Ed.2d 222

1. A full discussion of the factual background in these cases is contained in the Court's February 10 Order. *Podany v. Robertson Stephens, Inc.*, 2004 WL 307296 (S.D.N.Y. Feb.17, 2004).

(1962) (except under certain circumstances, district courts should allow amendment to correct pleading deficiencies); *Hemphill v. Schott*, 141 F.3d 412, 420 (2d Cir.1998) (same), plaintiffs offered no indication whatsoever that the defects identified in the February 10 Order could be cured, nor any indication of what an amended pleading might look like. Amendment would be futile under such circumstances, and thus there was no reason for the Court to exercise its discretion to permit further pleading. *Foman*, 371 U.S. at 182, 83 S.Ct. 227; *Oneida Indian Nation v. Sherrill*, 337 F.3d 139, 167 (2d Cir.2003).

■ Plaintiffs' request for discovery does not provide such a reason. Except in certain limited circumstances, *see, e.g.,* Fed.R.Civ.P. 27 (allowing depositions before an action is filed where necessary to perpetuate vital testimony), discovery is authorized solely for parties to develop the facts in a lawsuit in which a plaintiff has stated a legally cognizable claim, not in order to permit a plaintiff to find out whether he has such a claim, and still less to salvage a lawsuit that has already been dismissed for failure to state a claim. Whatever the norms of discovery in the ordinary lawsuit, such a request is even more plainly without merit in cases covered by the PSLRA. In such cases, Congress has specifically imposed a stay of "all discovery and other proceedings ... during the pendency of any motion to dismiss," 15 U.S.C. § 78u–4(b)(3)(B), creating a strong presumption that *no* discovery should take place until a court has affirmatively decided that a complaint *does* state a claim under the securities laws, by denying a motion to dismiss. *See also* S. Rep. 104–98, at 14 (1995) ("the Committee has determined that discovery should be permitted in securities class actions only after the court has sustained the legal sufficiency of the complaint.").

■ While the PSLRA permits a court to lift the stay if it makes a finding that "particularized discovery is necessary to preserve evidence or prevent undue prejudice to [a] party," the entire purpose of the stay provision is to avoid saddling defendants with the burden of discovery in meritless cases, and to discourage the filing of cases that lack adequate support for their allegations in the mere hope that the traditionally broad civil discovery proceedings will produce facts that could be used to state a valid claim. *See id.* (describing testimony on the costs and burden of discovery in private securities litigation and decrying the use of discovery for "fishing expeditions"). To grant a motion for post-dismissal discovery, where a complaint has already been found inadequate and where plaintiffs' hope of finding facts to salvage the complaint is entirely speculative, would fly in the face of clear congressional intent.

The cases cited by plaintiffs are not to the contrary. (P. Mem. 6–7.) *In re WorldCom* is simply a case in which the PSLRA stay was lifted to permit limited discovery in a still-pending case, where the complaint had not been dismissed (indeed no motion to dismiss had yet been filed), and where special circumstances not present here warranted lifting the stay to prevent significant harm to plaintiffs. 234 F.Supp.2d 301, 305–06 (S.D.N.Y.2002). The harm to the WorldCom plaintiffs identified by Judge Cote stands in sharp contrast to the generalized harm asserted by plaintiffs here of being unable to continue to pursue claims that have been found legally insufficient. *Id. In re FirstEnergy* is a shareholder derivative action, which the district court explicitly noted falls outside the PSLRA. 219 F.R.D. 584, 586–87

(N.D.Ohio 2004).[2] Finally, in *Anderson v. First Security Corp.*, although the PSLRA stay was lifted after a finding that plaintiffs' complaint was legally insufficient, the permitted discovery in that case was from a non-party who expressly *consented* to the requested depositions and document production but had been prevented from participating by the defendants' strict enforcement of a confidentiality agreement that required a subpoena for the production of information. 157 F.Supp.2d 1230, 1240–41 (D.Utah 2001). The facts of *Anderson* do not implicate the congressional intent underlying the PSLRA stay to the same degree as these cases, and, even if the decision in *Anderson* were binding on this Court, the same result is not compelled here.

On reply, however, while not withdrawing their request for discovery, plaintiffs did attach proposed amended complaints, which they contend provide a basis for leave to replead and for allowing discovery to proceed. Having obtained a copy of defendant Johnson's testimony in a deposition by the Securities and Exchange Commission,[3] plaintiffs now set forth additional facts derived from that testimony, and incorporate those facts into the new proposed amended complaints. In a sur-reply, which the Court authorized to allow defendants to address the new matters raised in the reply brief, defendants again oppose the filing of amended complaints, arguing *inter alia* that the proposed amendments would be futile.

Plaintiffs' eleventh-hour proposal of amended complaints, filed in a reply brief on a motion to amend a judgment of dismissal, is to say the least unconventionally timed. Nevertheless, the predominant issue here must be the merits of plaintiffs' proposed amended complaints. Plaintiffs' previous complaints were dismissed not because they failed to state a viable legal theory, but because they failed to assert specific facts sufficient to meet the standards under Federal Rule of Civil Procedure 9(b), the PSLRA, and *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1095–96, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991), that allegations of fraudulent opinions regarding securities be alleged "with particularity" by way of "provable facts." *Id.* at 1096, 111 S.Ct. 2749. If plaintiffs can state a cause of action for fraud, based on information that has recently come to light, which confirms the suspicions that gave rise to their initial complaint, the Court would permit amendment, absent prejudice to defendants or bad faith on the part of plaintiffs. The proposed amended complaints, however, do not cure the de-

---

**2.** Although plaintiffs cite to *In re FirstEnergy Corp. Sec. Litig.*, 03 Civ. 1684 (N.D.Ohio (P.Mem.2, 6)), the then-unpublished order they attach for this cite is from *In re FirstEnergy Shareholder Derivative Litig.*, 219 F.R.D. 584 (N.D.Ohio 2004) (now published at 219 F.R.D. 584). No order of the same date was issued in the securities class action lawsuit, no published order on discovery has been issued in the securities lawsuit, and on May 3, 2004, the district court denied defendants' motion to dismiss the securities lawsuit (and there is no indication in the opinion that plaintiffs had yet had discovery in contravention of the PSLRA). 2004 WL 938440 (N.D.Ohio May 3, 2004).

**3.** The exact manner in which plaintiffs obtained this information remains in dispute. Defendants have alleged an abuse of process (D. Mem. 5 n. 3), based on subpoenas served on the S.E.C. by plaintiffs after these actions had been dismissed. (D.Mem.Ex. C.) Although the subpoenas were plainly improper, plaintiffs do not appear to have received Johnson's deposition transcript as a result of issuing them, since the S.E.C. assured defendants in a letter that it had no intention of responding to the invalid subpoenas. (Fieldstein Decl., Ex. B.)

fects that resulted in the dismissal of the original complaints.

The proposed amended complaint in *Finazzo*, alleging the issuance of fraudulent opinions regarding the securities of Redback, is easily disposed of. The essential issue here is whether plaintiffs have alleged facts giving rise to "a strong inference of fraudulent intent," *Acito v. IMC-ERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995), which in this case would mean facts that indicate Johnson deliberately misrepresented his true opinion of the value of securities in reports he issued, not merely that his opinions were wrong or misguided or unjustifiably optimistic in the plaintiffs' present analysis. *See, e.g., Stevelman v. Alias Research, Inc.*, 174 F.3d 79, 85 (2d Cir.1999). For example, in the parallel case of *DeMarco*, the plaintiffs alleged that Johnson and Robertson Stephens had issued a report recommending that the investing public buy Corvis securities at the very moment that Johnson was selling his own holdings, and recommending to insiders at Robertson Stephens that they sell theirs as well. No such facts were pled in the *Finazzo* complaint, which relied only on evidence that, given the facts surrounding Redback's merger with another company, no reasonable and objective analyst could have held genuinely positive opinion, that Johnson's conflicts of interest (and therefore motive to disseminate false opinions) were undisclosed or insufficiently disclosed, and that Johnson engaged in similar allegedly fraudulent conduct with respect to the Corvis securities. The Court found these facts legally insufficient to state a claim for securities fraud and dismissed the *Finazzo* complaint. *Podany*, 2004 WL 307296.

Although plaintiffs claim to have discovered "precisely the powerful evidence that was lacking from the original complaint" (P. Rep. 1), in fact almost no additional information bearing on Johnson's opinion of Redback is included in the amended *Finazzo* complaint. Plaintiffs do not allege that Johnson sold his Redback shares while telling the world it should buy, nor that he advised his friends or associates to sell their Redback shares contrary to his public advice. The new facts now alleged—that Johnson placed his Redback stock in a blind trust and used the shares as collateral for a loan—do not demonstrate, or even support a plausible inference, that Johnson did not truly believe the stock was valuable or likely to appreciate.

The proposed *Podany* amended complaint, alleging fraudulent opinions regarding the securities of Sycamore, presents a closer question. That complaint alleges that Johnson did sell a portion of his Sycamore holdings in late November or early December 2000, after issuing a report on November 15, 2000, which reiterated his previous "buy" rating for Sycamore, a rating which was repeated in Johnson's February 14, 2001, report. Moreover, the alleged transaction was not an ordinary sale of securities. According to the complaint, the Sycamore shares were in a blind trust and in order to dispose of the shares Johnson had to violate the terms of the trust and specifically direct the sale. It is arguable that this suggests a greater than normal urgency to sell the shares.[4] At the same time, while Johnson elected to sell

4. Defendants suggest in their sur-reply that the urgency was occasioned by a need for liquidity to cover a downpayment of some sort (D.Rep. 4), and that Johnson's custodial account at U.S. Trust was not a "blind trust" (D. Rep. 2 n. 1). However, in evaluating the possible futility of plaintiffs' proposed amendments, the Court must accept as true all of the well-pleaded allegations in the proposed amended complaints in order to determine if they could survive a motion to dismiss.

about half of his shares, it appears that he retained the balance throughout the period in which he was recommending the stock as an investment. Moreover, Johnson did not dispose of even the first half immediately after receiving his Sycamore shares in early September 2000, but rather held those shares for nearly three months, when their value had dropped by more than half from the date he received them. In that light, Johnson's handling of his Sycamore shares hardly constitutes evidence from which a factfinder could draw a "strong inference" that he did not subjectively believe the opinion he was propounding in his analyst reports.

Plaintiffs also make much of a January 2000 e-mail exchange between Johnson and another Robertson Stephens analyst, Tim Weingarten. In response to Weingarten's comment that the announcements of another telecom startup company, also covered by Johnson but not the subject of either of these lawsuits, regarding customer "wins" were "a joke," Johnson replied, "[h]owever, fiction is sometimes more powerful than reality. Do you believe that Sycamore wins are that much more impressive?" (D. Rep., Ex. A at ¶ 42.) Despite plaintiffs' best rhetorical efforts, these remarks simply are not evidence that Johnson's published opinions on Sycamore (or Redback, for that matter) were fraudulent. In the context of the technology and telecom startup companies that Johnson analyzed, many of whom did not have any significant business or financial history, and in the context of a market in which, like all markets, pricing is determined relative to the market price of similar goods, these brief remarks do not give rise to an inference of fraudulent intent. To the contrary, Johnson's statement reads as an assertion that this startup's shares (and, by implication, Sycamore's) had value, in an optimistic market, notwithstanding alleged weaknesses in the business's acquisition of customers.

Fraud may not be alleged based on a tortured reading that would turn a casual e-mail remark on the importance of perception to a startup's prospects into some sort of "confession" by Johnson that his published analyst reports on those companies were themselves "fiction." Although the e-mail may indicate that Johnson did not feel compelled to deflate what appear in hindsight to be wildly unstable and overpriced market valuations in telecom startups, and this may reflect poorly on his desirability as a personal investment advisor, it simply does not support an inference, much less a strong inference, that his published opinions regarding Sycamore and Redback were not truly held. *See, e.g. In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 273 F.Supp.2d 351, 358 (S.D.N.Y.2003) (the securities laws are not intended to underwrite investor risk or to serve as insurance for investment losses).

■ The Court is mindful that an inference of fraudulent intent may be based on the totality of the evidence, and that plaintiffs need not establish that each individual fact, taken alone, creates a strong inference of fraud. However, in these cases, although the conduct of Johnson and Robertson Stephens with respect to Redback and Sycamore securities, at least as alleged by plaintiffs, appears to stray far from the standards one might hope would govern the behavior of once-respected investment analysts at financial services institutions, it falls short of the pleading standards for securities fraud. The plaintiffs' request for permission to file amended complaints in the *Finazzo* and *Podany* actions is denied on grounds of futility, and the Court declines to grant permission for plaintiffs to conduct discovery of defendants in these dismissed actions.

## CONCLUSION

For all of the foregoing reasons, the plaintiffs' motion to amend the order and judgment of dismissal pursuant to Rule 59(e), to lift the stay of discovery under the PSLRA, and for entry of a scheduling order is denied.

SO ORDERED.